UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Michael H., <br><br>           Plaintiff, <br><br> v. <br><br> Martin O'Malley[1], Commissioner of Social Security, <br><br>           Defendant. | Civil No. 3:23-CV-00161 (MPS) <br><br><br><br> January 17, 2024 |

### <u>RECOMMENDED RULING ON PENDING MOTIONS</u>

Plaintiff, Michael H.[2], appeals the decision of the Commissioner of Social Security ("Commissioner" or "Defendant"), rejecting his application for Title II Disability Insurance Benefits ("DIB").[3] (ECF No. 1.) He moves the Court for an order reversing the Commissioner's decision and for an order remanding the case for a new hearing or for a calculation of benefits. (ECF Nos. 1 at 1, 17-1 at 19.) The Commissioner moves for an order affirming that decision. (ECF No. 25.)

---

[1] When Plaintiff filed this action, he named the then-Acting Commissioner of the Social Security Administration, Kilolo Kijakazi, as defendant. (Compl., ECF No. 1.) Acting Commissioner Kijakazi no longer serves in that office. Her successor, Commissioner Martin O'Malley, is automatically substituted as the defendant pursuant to Fed. R. Civ. P. 25(d). The Clerk of the Court is respectfully requested to amend the caption of the case accordingly.

[2] Pursuant to D. Conn. Standing Order CTAO-21-01, Plaintiff will be identified solely by first name and last initial throughout this opinion.

[3] Plaintiff also filed an application for Supplemental Security Income under Title XVI on February 21, 2021. His application was granted on March 14, 2023, finding Plaintiff disabled as of February 2021. (ECF No. 17-1 at 2; ECF No. 17-2, Ex. A.)

For the reasons detailed below, the Court recommends that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 17) be **DENIED** and the Commissioner's Motion for an Order Affirming the Decision (ECF No. 25) be **GRANTED**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On September 29, 2020, Plaintiff filed an application for DIB benefits under Title II.  (R. 17, 106.)  He claimed that he could not work due to Multiple Sclerosis with loss of balance, fatigue, and weakness, Major Depressive Disorder, Anxiety, and PTSD.  (R. 108.)  He alleged a disability onset date of October 1, 2016 and a date last insured date of March 31, 2019.  (R. 20, 108.)  His applications were denied initially on November 17, 2020 (R. 17, 106-113), and upon reconsideration on January 14, 2021.  (R. 17, 114-123.)

On July 16, 2021, the ALJ issued an unfavorable decision.  (R. 17-33.)  The ALJs are required to follow a five-step sequential evaluation process in adjudicating Social Security claims and ALJ I.K. Harrington's written decision followed that format.  At Step One, she found that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2019. (R. 20.)  At Step Two, she found that Plaintiff suffers from the severe impairments of anxiety and obsessive-compulsive disorders, depressive, bipolar and related disorder, attention deficit hyperactivity disorder (ADHD), and trauma and stressor-related disorders.  (*Id.*)  At Step Three, she concluded that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the "Listings" – that is, the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1.  (R. 21-23.)  She then determined that, notwithstanding his impairments, Plaintiff retained the residual functional capacity to:

> [P]erform a full range of work at all exertional levels but with the following
> nonexertional limitations: the claimant can perform simple, routine tasks involving
> no more than simple short instructions and simple work-related decisions with few

workplace changes. He can tolerate occasional interactions with coworkers, supervisors and the public.

(R. 23.)  At Step Four, the ALJ found that Plaintiff is unable to perform any past relevant work.

(R. 21.)  Finally, at Step Five, relying on the testimony of a vocational expert ("VE"), the ALJ

found that there are jobs that exist in significant numbers in the national economy that Plaintiff

can perform, including "hand packager", "kitchen helper", and "store laborer".  (R. 32-33.)

Accordingly, the ALJ determined that Plaintiff was not disabled from October 1, 2016, the alleged

onset date, through March 31, 2019, the date last insured.[4]  (R. 33.)

## II.    APPLICABLE LEGAL PRINCIPLES

To be considered disabled under the Social Security Act, "a claimant must establish an

'inability to do any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than [twelve] months.'"  *Smith v. Berryhill*, 740

F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)).  To

determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial

gainful activity . . . ."  *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v.*

*Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)).  At Step Two, the ALJ analyzes "whether the claimant

has a severe impairment or combination of impairments . . . ."  *Id.*  At Step Three, the ALJ evaluates

---

[4]    The relevant period under review for Plaintiff's DIB benefits runs from October 1, 2016, his alleged onset date through the date last insured March 31, 2019.  20 C.F.R. §§ 404.130, 404.315(a); *see Banyai v. Berryhill*, 767 F. App'x 176, 178 (2d Cir. 2019) (summary order), as amended (Apr. 30, 2019) ("To be entitled to disability insurance benefits, claimants must demonstrate that they became disabled while they met the Act's insured status requirements.") (citing 42 U.S.C. § 423(a)(1)(A), (c)(1)); *Solis v. Berryhill*, 692 F. App'x 46, 48 (2d Cir. 2017) (summary order) (finding the "relevant period" for establishing disability is the time between the alleged onset of disability and the date the claimant was last insured).

whether the claimant's disability "meets or equals the severity" of one of the "Listings" – that is, the specified impairments listed in the regulations. *Id.* At Step Four, the ALJ uses a residual functional capacity ("RFC") assessment to determine whether the claimant can perform any of his or her "past relevant work." *Id.* At Step Five, the ALJ addresses "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience." *Id.* The claimant bears the burden of proof at Steps One through Four. *Id.* At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r,* 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). Its role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error. "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .") (citations omitted). Though the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotation marks and

4

citations omitted).  When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment.  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

An ALJ does not receive the same deference if he has made a material legal error.  In other words, district courts do not defer to the Commissioner's decision where "an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted).  "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

## III.    DISCUSSION

Plaintiff raises three arguments on appeal arguing that the ALJ's ruling was legally erroneous or not supported by substantial evidence.  He first argues that the "ALJ erred in failing to incorporate limitations as to attendance and off task behavior in her RFC finding."  (ECF No. 17-1 at 10-14.)  Second, he claims the ALJ improperly weighed his credibility in that the RFC is not consistent with his testimony.  (*Id.* at 14-16.)  Last, he contends that the ALJ erred at Step Five by relying on the testimony of the VE in response to a hypothetical RFC which Plaintiff maintains was not supported by substantial evidence.  (*Id.* at 16-19.)  The Commissioner disagrees and argues that the ALJ did not commit legal error and substantial evidence supports her conclusions.  (ECF No. 25.)

For the reasons that follow, the Court concludes that the ALJ did not err as a matter of law and her decision was based on substantial evidence.

### A. Challenge to Mental RFC Finding

First, Plaintiff challenges the ALJ's RFC to do a full range of work with nonexertional limitations.[5]  (ECF No. 17-1 at 10-14.)  He argues that the "ALJ erred in not incorporating any limitations for absenteeism and off task behavior."  (ECF No. 17-1 at 10.)  He contends that the "medical records, Plaintiff's testimony and his employment records are consistent with a finding that the plaintiff would struggle with absenteeism, maintaining attendance, and staying on task."  (*Id.* at 11 (citing R. 931, 934).) Pointing to evidence in the record, the Commissioner argues that the ALJ did not err as a matter of law and substantial evidence supports the RFC.  (ECF No. 25-1 at 3-9.)

### 1. *Opinion of Ann Sawyer, LCSW*

Plaintiff argues that the "ALJ failed to provide a rationale for rejecting that portion of Ms. Sawyer's MSS that finds that the plaintiff would be unable to maintain attendance and would miss five days or more a month from work."[6]  (*Id.* at 12.)  He contends that Ms. Sawyer's findings are consistent with her treatment notes that did not "show improvement, but instead waxing and waning of symptoms, and shows only unsuccessful attempts at finding and maintaining work."  (*Id.*)  He further argues that the "ALJ's reference to baseline standards of mental health is not substantial evidence that Ms. Sawyer's opinions are inconsistent with the record" and the ALJ failed to explain "what part of the record contradicted or failed to support the medical opinions of

---

[5]     Given that Plaintiff does not challenge the ALJ's assessment of his physical impairments, the Court declines to address the ALJ's physical RFC findings in this opinion.  *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal); *see also Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

[6]     Plaintiff does not dispute that the ALJ considered the weight of mental health provider Ann Sawyer, LCSW's Medical Source Statement ("MSS") dated October 29, 2020 (R. 559-561) and articulated reasons for not finding it persuasive.  (ECF No. 17-1 at 12.)

Ms. Sawyer as to the plaintiff's inability to maintain attendance."  (*Id.* at 13.)  The Commissioner argues that substantial evidence supports the ALJ's RFC finding and Plaintiff failed to establish that he was more limited than the ALJ found him to be.  (ECF No. 25-1 at 4.)

"A claimant's RFC is the most [he] can still do despite [his] limitations and is assessed based on an evaluation of all relevant evidence in the record."  *Amanda W. v. Comm'r of Soc. Sec.,* No. 1:20-CV-1647-DB, 2022 WL 3578615, at *4 (W.D.N.Y. Aug. 19, 2022); *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999) ("RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.") (internal quotation marks omitted).  "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."  *Pardee v. Astrue,* 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).  The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence."  *Ferraris v. Heckler,* 728 F.2d 582, 587 (2d Cir. 1984).  Moreover, the ALJ's RFC determination need not perfectly correspond with any of the medical opinions in the record, provided she has weighed all of the evidence available to make an RFC finding that was consistent with the record as a whole.  *Johnson v. Colvin,* 669 F. App'x 44, 46 (2d Cir. 2016) (summary order) (citing *Matta v. Astrue,* 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)).  The ALJ must consider "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3).  "Genuine conflicts in the medical evidence are for the Commissioner to resolve."  *Veino v. Barnhart,* 312 F.3d 578, 588 (2d Cir. 2002).  "Plaintiff bears the ultimate burden of proving that [he] was disabled throughout the period for which benefits are sought." *Amanda W. v. Comm'r of Soc. Sec.,* No. 1:20-CV-1647-DB, 2022 WL 3578615, at *9 (W.D.N.Y.

Aug. 19, 2022); *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry[.]").

While Ms. Sawyer opined that Plaintiff "would be off-task more than thirty percent of the workday and absent from work more than five days per month" and "could perform a job, eight hours per day, five days per week less than fifty percent of the time", the ALJ properly exercised her discretion and determined that Plaintiff's limitations were not as severe as Ms. Sawyer stated and were "not supported by the evidence she relied upon to formulate her assessment." (R. 29-30.) A review of the ALJ's decision shows that the ALJ explicitly addressed Ms. Sawyer's opinion regarding time off-task and absenteeism and found it was not well-supported or consistent with other evidence of record. (R. 29-30.) The ALJ did not "arbitrarily substitute [her] own judgment for competent medical opinion." *Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998). Rather, the ALJ properly analyzed the opinion evidence and other evidence of record when developing Plaintiff's RFC, and substantial evidence supports the ALJ's RFC finding.

Specifically, the ALJ considered how Plaintiff's mental health impairments impacted his ability to work. She discussed Plaintiff's testimony regarding his symptoms and his daily activities. (R. 24.) She considered the treatment for his mental health conditions with various providers (R. 24-27), including APRN Allen, LCSW Sawyer and Dr. Linda Lacerte, citing to treatment records demonstrating that Plaintiff reported improvement in his mental condition, (R. 24-27, (citing R. 589 (reporting doing well), R. 643 (same), R. 1285 (better and ready to work), R. 1312 (reporting stable mood, manageable anxiety), R. 1338 (reporting anxiety is down and not depressed), R. 1420 (reporting mood is good, working, dating, energetic and optimistic), R. 1470 (reporting mood and affect are even))). The ALJ noted his activities of daily living as reported to his treatment providers (R. 27), including looking for work (R. 578, 582, 593, 597, 601, 616),

periods of employment (R. 606; 693, 1420), exercising, dating, gardening, dog walking, and caring

for his parents including doing all the cooking, laundry and most of the cleaning  (R. 693, 1306,

1423).  And the ALJ considered each of the opinions submitted.  (R. 27-30.)  The ALJ observed

that "when the claimant was medication and treatment compliant, he admitted to doing well, with

stable moods."  (R. 26 (citing R. 547 ("doing better, calmer"); R. 578 (reporting "anxiety is a lot

better"); R. 589 ("client doing well"); R. 643 ("mood and affect even"); R. 1306 (finding judgment

and insight good))).

In giving Ms. Sawyer's opinion limited weight, the ALJ addressed the other evidence of

record that did not support Ms. Sawyer's opinion.  For instance, she observed that claimant treated

with Ms. Sawyer weekly but his appointments were reduced to every other week, concluding that

"[t]his decrease in treatment frequency is inconsistent with someone with limitations as severe as

Ms. Sawyer purported."  (R. 30, 81 (Plaintiff testifying he received therapy every two weeks).)

Other treatment records show that Plaintiff's treatment providers', including Ms. Sawyer's,

"treatment notes document the claimant's normal memory skills, logical thought processes, normal

communication abilities and good insight and judgment" and "intact mental status examination

findings" and relatively benign mental status examination findings.  (R. 24-27 (*see, supra,* at 8).)

The ALJ found that his mental impairments were not "work preclusive as he was actively searching

and indeed encouraged to seek and expand his job options by mental health providers."  (R. 27,

29; *see, supra,* at 8.)  In May 2017, Ms. Sawyer provided a letter stating that his post-traumatic

stress disorder "should not have any negative impact on [his] performance as a massage therapist."

(R. 29, R. 1196.)  The ALJ also noted that Ms. Sawyer's opinion is "inconsistent with the assigned

GAF scores of 61-70, which support that the claimant has mild symptoms with some difficulties

in social or occupational functioning."  (R. 29-30 (citing R. 387-511; 564-648 (assigning GAF

scores ranging from 55 ("moderate symptoms)", 61-70 ("some mild symptoms") to 71-80 ("transient symptoms); R. 30 ("the [Global Assessment of Functioning ("GAF")] ratings of 61-70 are consistent with the relatively benign mental status examination findings of record and the claimant's varied activities of daily living, including his ability to care for his parents and garden.")).)  While rejecting part of Ms. Sawyer's opinion, the ALJ ultimately concluded that Plaintiff's mental health conditions affected his ability to perform tasks, follow instructions, make workplace decisions and changes and tolerate interactions with others and incorporated those nonexertional limitations in the RFC.  (R. 23.)

Plaintiff's challenge to the ALJ's determination of his mental impairments amounts to nothing more than disagreement with the ALJ's weighing of the evidence and does not warrant remand.  It "is not the function of this Court to re-weigh the evidence or consider *de novo* whether Claimant is disabled." *Traci R. o/b/o E.A.O.B. v. Comm'r Soc. Sec.,* 5:21-cv-00607 (DNH/TWD), 2022 WL 4354367, at *3 (N.D.N.Y. Sept. 20, 2022).  "Here, [Plaintiff] had a duty to prove a more restrictive RFC, and failed to do so."  *Smith v. Berryhill,* 740 F. App'x 721, 726 (2d Cir. 2018) (summary order); *see also Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015) (summary order) ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits.").  In sum, review of the ALJ's decision demonstrates she appropriately evaluated conflicting evidence and she adequately explained how she resolved those conflicts.  "'[A]n ALJ is not required to discuss in depth every piece of evidence contained in the record, so long as the evidence of record permits the Court to glean the rationale of an ALJ's decision.'"  *Coleman v. Comm'r of Soc. Sec.*, 5:14-cv-1139 (GTS/WBC), 2015 WL 9685548, at *5 (N.D.N.Y. Dec. 11, 2015), *report and recommendation adopted*, 2016 WL 109994 (N.D.N.Y.

Jan. 8, 2016) (quoting *LaRock ex rel. M.K. v. Astrue*, No. 10-cv-1019 (NAM/VEB), 2011 WL 1882292, at *7 (N.D.N.Y. Apr. 29, 2011)).  The Court is satisfied that the ALJ performed a detailed review of the evidence of record.

Accordingly, the Court finds that the ALJ did not commit legal error and the RFC is supported by substantial evidence.

### 2. *Global Assessment of Functioning Scores*

Plaintiff also argues that the ALJ erred in relying on the GAF scores contained in Ms. Sawyer's treatment notes, contending that "following the American Psychiatric Association's removal of GAF scores from the Diagnostic and Statistical Manual of Mental Disorder ("DSM"), the Social Security Administration has further constrained the use of GAF scores."  (ECF No. 17-1 at 13-14 (citing SSA AM-13066, July 22, 2013).)

"Although AM–13066 REV expresses several concerns about the use of a GAF rating, the Message clearly provides that '[f]or purposes of the Social Security disability programs, when it comes from an acceptable medical source, a GAF rating is a medical opinion.'" *Mitchell v. Colvin*, No. 14-CV-04154, 2015 WL 5306208, at *12 (S.D.N.Y. Sept. 10, 2015).  As demonstrated above, the ALJ did not *solely* rely on Ms. Sawyer's GAF scores and considered the scores in the context of her treatment records and the other evidence of record.  *See Wiggins v.* Colvin, No. 3:13-cv-01181 (MPS), 2015 WL 5050144, at *4 (D. Conn. Aug. 25, 2015); SSA AM-13066, July 22, 2013 (noting that "courts in this Circuit have criticized ALJs for relying on GAF scores *alone* as a basis for rejecting a treating opinion.") (emphasis added) (citing *Alsheikhmohammed v. Colvin,* No. 6:14–cv–461(GTS), 2015 WL 4041736, at *8-9 (N.D.N.Y. July 1, 2015) ("[T]he ALJ erroneously placed significant emphasis on Plaintiff's GAF score of 60 as definitive support of his reasoning in affording her opinion less weight.  Although a GAF score is opinion evidence, it should be

considered in the context of the record and not as a stand-alone indicator of Plaintiff's ability (or inability) to function.")).  The Court finds that the ALJ did not err in referencing the GAF scores assigned by Ms. Sawyer and other providers in her decision.

Thus, the Court is satisfied that the ALJ employed the correct legal standards and substantial evidence exists to support the ALJ's decision with regard to Plaintiff's RFC to perform a full range of work at all exertional levels with nonexertional limitations.

### B. Step Five Challenge

Plaintiff argues that "[b]ecause the ALJ failed to properly determine the RFC at Step 3, her conclusions at Step 5 are not supported by substantial evidence."  (ECF No. 17-1 at 16.)  Plaintiff argues that the first hypothetical posed to the VE was "not accurate" because it was based on the ALJ's faulty RFC determination thus compiling the error.  (*Id.* at 17.)  This argument fails for the same reason as Plaintiff's principal challenge to the RFC discussed *supra*.

The Commissioner's burden at step five is to show the existence of possible employment for an individual with the RFC *determined by the ALJ* in the fourth step of the sequential analysis. *See* 20 C.F.R. § 404.1546(c).  "Where, as here, the RFC determination is supported by substantial evidence, however, such an attempt to bootstrap the same argument into Step Five should be rejected." *Tiffany C. v. Comm'r of Soc. Sec.,* No. 5:17-cv-878 (FJS/DJS), 2018 WL 4610676, at *6 (N.D.N.Y. June 20, 2018), *report and recommendation adopted sub nom., Tiffany C. v. Berryhill*, No. 5:17-cv-878 (FJS/DJS), 2018 WL 3344212 (N.D.N.Y. July 9, 2018) (citing *Talbot v. Colvin*, 5:14-cv-879 (GLS), 2016 WL 320156, at *6 (N.D.N.Y. Jan. 26, 2016)).

As set forth, *supra*, the ALJ properly analyzed the record and the RFC is supported by substantial evidence.  *Id.*  "Having properly determined Plaintiff's residual functional capacity, the ALJ did not err in using that residual functional capacity to determine (with the help of a vocational

expert) whether jobs existed in the national economy that Plaintiff could perform." *Williams v. Colvin,* 98 F. Supp. 3d 614 (W.D.N.Y. 2015); *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 114 (2d Cir. 2010) ("Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the [VE] that was based on that assessment"); *see Ridgeway v. Colvin,* No. 12–CV–6548T, 2013 WL 5408899, at *10 (W.D.N.Y. Sept. 25, 2013) ("Because there is substantial evidence in the record to support the ALJ's assessment of Plaintiff's RFC, the ALJ is entitled to rely on the vocational expert's testimony that Plaintiff could perform other jobs that exist in significant numbers in the national economy."). Accordingly, the ALJ did not err in relying on the testimony of the vocational expert as well as Plaintiff's age, education, work experience, and RFC in concluding that Plaintiff was not disabled within the meaning of the Act.

### C.  Evaluation of Plaintiff's Credibility

Next, Plaintiff argues that the ALJ erred in assessing his credibility with respect to his symptoms.  (ECF No. 17-1 at 14-16.)  Plaintiff contends that in making the credibility determination, the ALJ placed disproportionate weight on his activities of daily living, such as caring for his elderly parents, gardening, going to the gym, and dating.  (ECF No. 17-1 at 15.)  The Court disagrees.

The Regulations set forth a two-step process that an ALJ must follow in evaluating a plaintiff's subjective complaints.  Social Security Ruling ("SSR") 16-3P, 2017 WL 5180304, at*2 (SSA Oct. 25, 2017).  First, the ALJ must determine whether the record demonstrates that plaintiff possesses a "medically determinable impairment that could reasonably be expected to produce [plaintiff's] symptoms, such as pain."  20 C.F.R. §§ 404.1529(b), 416.929(b), SSR 16-3P, 2017 WL 5180304, at *3.  Second, the ALJ must assess the credibility of plaintiff's complaints regarding

13

"the intensity and persistence of [plaintiff's] symptoms" to "determine how [the] symptoms limit [plaintiff's] ability to perform work-related activities." 20 C.F.R. §§ 404.1529(c), 416.929(c), SSR 16-3P, 2017 WL 5180304, at *3.

"An ALJ's credibility finding as to the claimant's disability is entitled to deference by a reviewing court," *Rivera v. Berryhill*, 17-CV-991 (JLC), 2018 WL 4328203, at *10 (S.D.N.Y. Sept. 11, 2018) (citing *Osorio v. Barnhart*, No. 04 Civ. 7515, 2006 WL 1464193, at *6 (S.D.N.Y. May 30, 2006)), in large part "because the ALJ had the opportunity to observe plaintiff's demeanor while [the plaintiff was] testifying." *Marquez v. Colvin*, No. 12 Civ. 6819 (PKC), 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013). Thus, a district court will not "second-guess" the ALJ's credibility finding "where the ALJ identified specific record-based reasons for his ruling," *Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010), and where the finding is supported by substantial evidence. *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013).

Where an ALJ rejects a claimant's testimony as not credible, the basis for the finding must be set forth "with sufficient specificity to permit intelligible plenary review of the record." *Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983)). Further, an ALJ's credibility determination cannot be based on unsupported interpretations of raw medical evidence or mischaracterizations of the record. *Henderson v. Berryhill*, 312 F. Supp. 3d 364, 369 (W.D.N.Y. 2018).

Plaintiff was fifty years old on June 25, 2021, the date of the ALJ's hearing. He stated he was living with his parents since his divorce in 2013. (R. 76-77.) He has a high school education and is a certified over-the road truck driver, CDL licensed truck driver. (R. 77.) He is also certified as an auto-body repairman, massage therapist, bartender, and casino dealer in the main three games. (*Id.*)

Plaintiff testified he was raped in 2015, while attending massage therapy school. (R. 79.) He experienced sexual abuse as a child and stated that the 2015 event brought up his past trauma and intensified his anxiety and depression and post-traumatic stress symptoms. (R. 79, 81.) In 2016, he experienced fear of leaving the house which "led to muscle paralysis" stiffness and an "inability to move." (R. 78.) After graduation from massage therapy school in 2016, he applied for jobs but did not receive any offers because "[d]uring the audition period, [his] anxiety level or fear was unacceptable to the spa manager." (*Id.*) He was unable to relax. (*Id.*) He testified that he experiences "fear of the day and what can happen" and panic attacks every other day that "[t]urns into a stiffness or rigidity." (R. 81.) These symptoms have worsened since 2019; "these last six, seven, eight months [were] the worst." (R. 82.)

Plaintiff testified he received mental health treatment with LCSW Ann Sawyer since 2015. (R. 80.) At the time of the June 2021 hearing, he was scheduled for therapy once every two weeks. (R. 81.) During the disability period under review, he stated he did not attend an Intensive Outpatient Program or treat with another mental health treatment provider. (R. 81.)

Plaintiff was diagnosed with Multiple Sclerosis *after* his date last insured, March 31, 2019. (R. 681-2/3/2020 Neurologist Dr. Derek Smith, stating "Given the history and evolution of changes of his MRI scans he can now be diagnosed with multiple sclerosis."); (R. 1431-2/5/2020 LCSW Sawyer stating claimant reported "that he has been diagnosed with MS[.]").) Leading up to his MS diagnosis, he experienced physical symptoms such as balance issues, pins and needles to his toes and feet, and double vision. (R. 21, 82.) At the time of the hearing in June 2021, he was experiencing trouble sleeping; stiffness in the morning; difficulty eating and maintaining weight and maintaining self-care; temperature intolerance, muscle rigidity, dizziness, and balance issues and falling. These symptoms he attributed to MS. His balance issues improved with

physical therapy.  (R. 21, 83-85, 89-90, 92.)  He was not using a cane or assisted device to ambulate.  (R. 85.)

Here, in evaluating plaintiff's subjective symptoms, the ALJ discounted Plaintiff's description of his mental health symptoms on several grounds supported by the evidence of record. First, the ALJ reasoned that plaintiff's daily activities "are inconsistent with a level of severity that would preclude [Plaintiff] from performing any work activity as a person in as much distress as the claimant alleged would be expected to be much more limited in their daily activities."  (R. 27). This was not erroneous.  *See Cohen v. Comm'r of Soc. Sec.*, 643 F. App'x 51, 53 (2d Cir. 2016) (finding that the ALJ properly discredited the claimant's testimony based on record evidence of her activities of daily living, including going out with friends and using public transportation to get to her doctors' appointments); *Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011) (holding that the claimant's admitted activities of daily living supported the ALJ's determination); *Wolfe v. Comm'r of Soc. Sec.*, 272 F. App'x 21, 22 (2d Cir. 2008) (summary order) (finding no error in the ALJ credibility determination where claimant's "sworn testimony that she was unable to return to any kind of work was weakened by her testimony and other representations" that she attended church, shopped, attended weekly football games); *Donnelly v. Barnhart*, 105 F. App'x 306, 308 (2d Cir. 2004) (summary order) (holding that the ALJ properly discounted the plaintiff's assertions based on statements that claimant cooked dinner, folded clothes, and sewed and other evidence of record).

The ALJ explained that Plaintiff's daily activities during the disability period under review undermined his allegations of disabling symptoms.  She noted Plaintiff's statements to his treatment providers that he was "actively looking for work, and working as a massage therapist", went to the gym, dated, cooked, did laundry, cleaned, gardened, cared for his parents and

socialized. *See supra,* at 8-10; SSR 16-3P, 2017 WL 5180304, at *6 (noting that a claimant "may make statements about symptoms directly to medical sources.").

The ALJ did not rely solely on Plaintiff's reported daily activities when assessing his subjective complaints of symptoms. The ALJ noted that LCSW Sawyer provided a letter in May 2017, indicating that his post-traumatic stress disorder "should not have any negative impact on [his] performance as a massage therapist." (R. 29 (citing R. 513, 1196).) The ALJ also assessed that the treatment records contained "benign mental status examination findings" and "[t]here was no evidence that claimant required higher levels of care or regular inpatient psychiatric hospitalizations." (R. 24-27.) And, "when the claimant was medication and treatment compliant, he admitted doing well, with stable moods." (R. 25; R. 26-27; *see, supra,* at 8-10.)

Plaintiff clearly disagrees with the ALJ's evaluation of the evidence. "The Second Circuit has made clear that it is the plaintiff who bears the burden of proving that her RFC is more restricted than that found by the ALJ, whereas the Commissioner need only show that the ALJ's decision was supported by substantial evidence in the record." *Justin B. v. Comm'r of Soc. Sec.,* No. 20-CV-01810-MJR, 2022 WL 17592399, at *9 (W.D.N.Y. Dec. 13, 2022) (citation omitted).

However, "[t]he substantial evidence standard means once an ALJ finds facts, [a reviewing court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise."* *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original). This case does not present such a situation. For all the foregoing reasons, the ALJ did not err in assessing Plaintiff's credibility and his determination is supported by substantial evidence.

## IV.    CONCLUSION

Based on the foregoing, the Court finds that the ALJ did not err as a matter of law and her decision was supported by substantial evidence. As such, Plaintiff's Motion for Order Reversing the Commissioner's Decision (**ECF No. 17**) is **DENIED** and Defendant's Motion for an Order

Affirming the Decision of the Commissioner **(ECF No. 25)** is **GRANTED**. The Court recommends that judgment enter in favor of Defendant.

This is a recommended ruling by a magistrate judge. *See* Fed. R. Civ. P. 72(b)(1). Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen days of being served with this order. *See* Fed. R. Civ. P. 72(b)(2). Failure to object within fourteen days will preclude appellate review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; D. Conn. L. Civ. R. 72.2(a); *Impala v. United States Dep't of Justice*, 670 F. App'x 32 (2d Cir. 2016) (summary order) (failure to file timely objection to magistrate judge's recommended ruling precluded further appeal to Second Circuit); *Small v. Secretary of H.H.S.*, 892 F.2d 15 (2d Cir. 1989) (per curiam).

*/s/ Maria E. Garcia U.S.M.J.*

Hon. Maria E. Garcia
United States Magistrate Judge